UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAMELA BURKE

              Plaintiff,                       Case No. 06-12062

vs.                                      DISTRICT JUDGE JULIAN ABELE COOK, JR.
                                          MAGISTRATE JUDGE STEVEN D. PEPE

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

              Defendant.
_____/

### REPORT AND RECOMMENDATION

## I.    BACKGROUND

Pamela Burke brought this action under 42 U.S.C. §405(g) and §1383(c)(3) to challenge a final decision of the Commissioner finding that Plaintiff was no longer disabled or entitled to Disability Insurance Benefits (DIB) under Title II of the Social Security Act and Supplemental Social Security Income (SSI) under Title XVI of the Social Security Act. Both parties have filed motions for summary judgment, which have been referred pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the following reasons, **IT IS RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED** and the Commissioner's motion for summary judgement **GRANTED**.

### A.    Procedural History

Plaintiff was originally found disabled and granted disability insurance benefits and supplemental security income benefits on February 13, 1997, due to an open wound of the upper body (R. 42). On January 4, 2002, Burke was informed that her disability had ceased (R. 50-52).

1

She timely requested a hearing before an administrative law judge, and that hearing was held on July 12, 2004, before Administrative Law Judge Daniel G. Berk (ALJ) (R. 451- 484). Plaintiff was represented by Attorney David Morreale and Vocational Expert Pauline Pegram (VE) was also present but did not testify (R. 261-264).

In an October 11, 2004, decision ALJ Berk concluded that Plaintiff was not under a disability as defined by the Act since January 1, 2002 (R. 19-30). On March 7, 2006, the Appeals Council denied Plaintiff's request for review (R. 5-7).

### B. **Background Facts**

#### 1. ***Plaintiff's Hearing Testimony and Statements***

Plaintiff was 46 years old and 5'8" tall at the time of the hearing (R. 455). She finished the twelfth grade and had received no other vocational training. Plaintiff was a widow and had no dependent children.

From January 2004 until one week prior to the July hearing Plaintiff worked at Burlington Coat Factory in the sportswear department conducting sales approximately 20 hours per week (R. 455-456). She originally testified that she did not lift or carry any objects, but later stated that she "put away stock, straightened things, assisted customers" (R. 456, 462). Plaintiff performed the work standing. She was terminated after she failed to show or call-in for her third scheduled work shift (R. 457). Plaintiff stated her absence was due to depression, which she informed her employer would require hospitalization.[1] She indicated she would have returned to work if they had not replaced her. Moreover, she would have tried to work more hours if her

---

[1] Plaintiff later testified that she never went to the hospital because they did not have enough beds (R. 474).

employer had offered. Plaintiff stated further that she could have worked for Burlington Coat Factory in January 2003 if they had been hiring (R. 458). Yet, she expressed doubt that she would have been able to have worked in January 2002 due to mental problems (R. 459).

Plaintiff also had past work experience as a cashier, bartender and waitress. She was employed as a cashier at a grocery store, Nino Salvaggio's, for 3 months, but was terminated because she was unable to recall the codes associated with each fruit and vegetable (R. 464). Prior to working at Nino Salaggio's, Plaintiff worked as a bartender and waitress approximately 12 hours per week at the Georigian Inn, a motel (R. 465). Plaintiff indicated that the job ended because "business was slow, and I just wasn't making enough money. And depression" (R. 466). She had not applied for unemployment compensation for at least two years prior to the hearing date (R. 479).

Plaintiff reported that emotional problems and difficulty concentrating largely account for her difficulty working (R. 472). She had weekly episodes of depression with crying, feeling worthless, and suicidal rumination, which caused severe anxiety making it difficult for her to function or get out of bed (R 467, 474).[2] Plaintiff also claimed her bouts with depression made it difficult for her to relate to others and led her to attempt suicide (R. 475). Plaintiff treated with Dr. White, a psychiatrist, approximately 12 times a year and with Dr. Carrunden, a family practitioner (R. 468). Dr. White prescribed Xanax and Dr. White prescribed Zoloft, Xanax and Restoril (R. 469). Plaintiff had been taking the Zoloft for 5 years and combinations of these medications while working. She attempted to stop taking the medications, but claimed she felt

---

[2] Plaintiff claimed to be in a bout of depression at the time of the hearing (R. 475). She stated that her financial situation, inability to hold a job and hepatitis C made her depressed (R. 478).

3

"goofy" or suffered higher levels of anxiety (R. 471).

Plaintiff acknowledged that she had used heroin and occasionally alcohol. She claimed to have hepatitis C as a result of her drug usage, but had been told it was under control (R. 477). To questions from the ALJ, Plaintiff at first responded that she had never been intoxicated, and then that she had not been intoxicated for five years (R. 460). The ALJ asked Plaintiff if she remembered being at Mt. Clemens General Hospital in October 1998 after being struck while riding her bike. Plaintiff admitted that she may have consumed "a couple drinks." ALJ Berk indicated that the hospital records showed Plaintiff had consumed a significant amount of alcohol in excess of a couple drinks.

Plaintiff stated she had been using heroin "on and off for about ten years" at a average cost of $10 a day. The ALJ indicated that July 2001 records from Mt. Clemens General Hospital stated Plaintiff had a 20 year history of heroin usage, but Plaintiff denied the accuracy of that record. In response to questions from the ALJ, Plaintiff asserted that her heroin usage cost $20 per week because she did not use heroin every day (R. 461). The ALJ indicated Plaintiff had told the hospital it cost $50 a week, but Plaintiff claimed she did not remember making that statement. Plaintiff supported her usage with money from her husband (R. 462).[3]

On February 21, 2002, Plaintiff completed a Daily Activities Questionnaire in which she reported that she did cleaning, laundry, and other work around the house and went shopping whenever she could get a ride and had money (R. 164). She watched soap operas and situation comedies on television (R. 165). Plaintiff visited with a neighbor about once a week.

---

[3] In June 1999, Plaintiff's husband died (R. 397).

## 2. *Medical Evidence*

Medical records dated November 11, 1996, from Saratoga Hospital show Plaintiff suffered a gunshot wound to the face with dental and oral injury on November 3, 1996 (R. 228-262). On November 7, 1996, Plaintiff underwent open reduction and internal fixation of the mandible fracture (R. 263-275). On June 19, 1996, a left iliac crest bone graft to the right mandible was performed (R. 291-301). On October 3, 1997, hardware removal of anterior mandible was performed (R. 302-304).

On October 26, 1998, Plaintiff was hospitalized after she was struck by an automobile while riding a bicycle (R. 305-338). The impression was of traumatic closed head injury, cerebral contusion whith cerebral concussion, intraparenchymal hemorrhage in the right temporal and right posterior parietal region, right maxillary fracture, multiple traumatic injuries, loss of consciousness, and alcohol intoxication. Plaintiff did not require any surgical intervention.

On October 28, 1998, Plaintiff was evaluated by Robert S. Burnstein, M.D., for depression and overall psychiatric status after she sustained a head injury and tested positive for alcohol intoxication, as well as drug use, at the time of her bicycle accident (R. 309). Plaintiff reported that she had been in outpatient psychiatric care for 9 to 12 months and had been taking medication. During the evaluation, screening for symptoms of depression were relatively benign (R. 310). Plaintiff reported that her mood had been basically stable over the past several months; her energy level was good; and she had been more active and wanted to do more things recently. She denied ever having any significant difficulty with suicidal ideation. Screening for symptoms of post traumatic stress disorder also was relatively negative. Dr. Burnstein diagnosed major

depression, in partial remission; adjustment reaction; alcohol abuse, rule out dependence; cocaine abuse; rule out opiate abuse; and rule out post traumatic stress disorder (R. 312). He assigned a global assessment of functioning (GAF) of 55/70.[4]

In November 2000, Ketan G. Rana, M.D. reported that Plaintiff had been diagnosed with hepatitis C approximately two years prior to her examination (R. 339-340). Despite a lack of treatment Plaintiff denied any symptoms, such as abdominal pain, nausea, vomiting, weight loss, fevers, chills, or chest pain. Dr. Rana's impression was of chronically elevated liver enzymes likely secondary to hepatitis C. Plaintiff was scheduled to return in two or three weeks, but there is no record of further treatment with Dr. Rana. On May 17, 2002, a medical evaluation was preformed by M. Ewald, M.D., for a chief complaint of hepatitis C (R. 407-409). Plaintiff stated that she had no current symptoms. The diagnosis was hepatitis C with no reported symptoms. On June 17, 2002, Plaintiff was evaluated in a liver clinic (R. 410-412). She indicated she had been feeling well and denied any recent weight change, jaundice, hematemesis, abdominal pain or swelling, hematochezia, melena or peripheral edema. It was unclear whether Plaintiff had chronic hepatitis C or a positive hepatitis C antibody. Physical exam found no stigmata of

---

[4]   The GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning." AMERICAN PSYCHIATRIC ASSOC., DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, (4th ed.1994) at 30. It ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *See id.* at 32. A GAF score of 31-40 indicates "some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood." *Id*. A GAF of 41 to 50 means that the patient has "[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)." *Id*. A GAF rating of 51 to 60 signals the existence of moderate difficulty in social or occupational functioning. *Id*.

chronic liver disease, and Plaintiff's hepatic synthetic remained intact.

From February 23, 2000, to December 3, 2001, Plaintiff treated with Victor Corondon, M.D. for various complaints and received conservative outpatient treatment (R. 371-392). Dr. Corondon's most recent impression was of intravenous drug abuse/heroin, a hypothyroid condition, left thigh cellulitis, hepatitis C, and pain related to motor vehicle accidents.

On June 2, 2001, Plaintiff was treated in the emergency room for a motor vehicle accident that resulted in a closed head injury, cervical strain, thoracic strain, and contusions of the pelvis and left leg (R. 341-345). There was no evidence of acute fracture or subluxation.

In July 2001, Plaintiff went to the emergency room with symptoms in her thigh and underwent surgery on a vein in her leg (R. 349). In post-surgical delirium, she became extremely agitated and combative (R. 349-50). On July 18, 2001, two days after the surgery, Dr. Burnstein conducted another psychiatric consultative examination (R. 349). The doctor noted that Plaintiff was not particularly forthcoming about her substance abuse history and attempted to suggest that her sudden vein condition was perhaps the result of a spider bite (R. 350). Yet, Plaintiff became more candid when the doctor informed her that a syringe needle and bent spoon were found in her belongings when she went to the emergency room. Plaintiff reported that she was using about $50 of heroine a week and had been doing so for several months. Plaintiff also reported that she had been seeing Dr. White for outpatient psychiatric treatment for several years and was stable on her current medications. Plaintiff emphatically denied suicidal ideation, plan, or intent, either current or previous (R. 351). She denied mood mobility or crying spells. She reported that she worked off and on for her mother-in-law at a local bar. Dr. Burnstein noted mild deficits in concentration (R. 352). He diagnosed

major depression that was stable with Zoloft, and polysubstance dependence, and assigned a GAF of 45 (R. 349).

On December 5, 2001, psychiatrist, G. Pope, M.D., conducted a consultative examination of Plaintiff (R.397-402). Plaintiff told the doctor that she had depression, but also said that she felt happy most of the time (R. 397). She also claimed initially to have low self-esteem, but later stated that she basically liked herself (R. 400). Plaintiff reported that she had been under psychiatric treatment with Dr. White for about four years (R. 398). Within the prior two months, she had worked part-time, 10 to 15 hours a week, as a waitress (R. 399). She said she had numerous friends, but could not socialize very much due to lack of transportation. Plaintiff had no hobbies, but had been trying to learn dress-making with patterns. She was interested in exercising and physical activity; she liked to ride her bicycle whenever she had the opportunity; she liked to listen to the radio; and she was interested in soap operas on television. She was active in all phases of homemaking–washing, cleaning, laundry–and was able to carry out all household chores. She indicated was fully capable of looking after herself. Plaintiff had had suicidal thoughts in the past, but she never made any attempts (R. 400). She was able to repeat 7 digits forward and 6 digits in reverse, and she remembered objects after three minutes (R. 401). The doctor diagnosed chronic dysthymic depressive disorder, fairly well compensated on the present therapeutic program; history of heroin addiction, in remission; and chronic misuse of benzodiazepine, and assigned a present GAF of 70 (R. 402).

On December 5, 2001, internist L. Banerji, M.D also conducted a consultative examination (R. 393-396). Plaintiff reported a gunshot injury to the face in 1996 and surgical repair of left knee and left ankle fractures 10 years ago. Plaintiff alleged pain and swelling of

8

left lower extremity and soreness over her left thigh.  She acknowledged not taking medications for her musculoskeletal complaints and did not need a walking aid or the use of a knee brace. Plaintiff reported well-controlled hypothyoidism.  Dr. Banerji's impression was multiple fractures with no significant abnormal physical findings or functional orthopedic limitations, except for the inability to squat more than 50 percent.

On January 2, 2002, Arthur F. Dundon, M.D., a state agency psychiatrist, reviewed the evidence of record and found that Plaintiff could not understand, remember, or carry out complex, technical instructions on a sustained basis and would have some problems maintaining attention and concentration, but could relate to others and adapt (R. 195). The doctor advised that Plaintiff retained the ability to do simple tasks on a sustained basis.

Ronald C. Marshall, Ph.D., L.P., a state agency psychologist, reviewed the evidence in March 2002 and advised that Plaintiff may have difficulty with complex-technical tasks, but retained the ability to do unskilled tasks on a sustained basis (R. 208-213).

In May 2002, Xavier White, M.D., Plaintiff's psychiatrist, submitted a report stating that he had treated Plaintiff since February 7, 2000, on a biweekly to monthly basis (R. 403, 406). He had prescribed medications, which had caused no side effects (R. 403).  Dr. White reported that Plaintiff had anxiety, tension, continuous feelings of helplessness and hopelessness, and a loss of interest in pleasurable activity.  He reported that Plaintiff had no history of substance abuse. Plaintiff interacted relatively well with staff and was always accompanied to her appointments by a neighbor, but she was basically fearful of people (R. 403-04).  Dr. White advised that she was isolated, withdrawn, and not able to attend to detailed tasks (R. 403).  Plaintiff could repeat

five digits forward and five in reverse and could remember three objects after three minutes (R. 405). Dr. White noted that Plaintiff had poor self-esteem (R. 404). He reported that Plaintiff had had multiple episodes of suicidal ideation and suicidal attempts. Dr. White diagnosed major depression of a current post traumatic stress syndrome; panic attack disorders with acrophobia; and paranoid personality, and assigned a GAF of 35 (R. 405-06). Nevertheless, Dr. White advised that Plaintiff could manage her own benefits.

*Medical Evidence Submitted After the October 11, 2004, decision to the Appeals Council*

Records from June 2, 2001 to February 21, 2005, were submitted from Victor Corondon, M.D., which document several of Plaintiff's previously stated conditions, such as hepatitis C and hypothyoidism.[5]

### 3. *The ALJ's Decision*

ALJ Berk found that Plaintiff was disabled within the meaning of the Social Security Act beginning November 3, 1996, but the medical evidence established that there had been an improvement in Plaintiff's medical impairment related to the ability to work (R. 29). Further, ALJ Berk found that Plaintiff had a history of gunshot wound to the face, multiple injuries from automobile accidents, fasciitis and cellulitis of the left thing, controlled hypothroidism,

---

[5] Because this evidence was not before the ALJ when he rendered the final decision of the Commissioner, it cannot be considered for substantial evidence review. *See Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 685 (6th Cir. 1992). The only purpose for which this Court can consider this additional evidence is to determine whether this case should be remanded to the agency pursuant to the sixth sentence of 42 U.S.C. § 405(g). *Cotton v. Secretary of Health and Human Services*, 2 F.3d 692, 695-96 (6th Cir. 1993). This court may remand the case if the additional evidence is new and material, and if there was good cause for failure to incorporate the additional evidence into the record at a prior hearing. 42 U.S.C. § 405(g) (sentence six); *See Wyatt*, 974 F.2d at 685; *Casey v Secretary of Health and Human Services*, 987 F.2d 1130, 1233 (6th Cir. 1993).

asymptomatic hepatitis, affective disorder, and polysubstance abuse (R. 30). Yet, the severity of Plaintiff's conditions did not meet or equal the requirements of any impairment listed in Appendix 1, Subpart P, of Regulations No. 4 (20 C.F.R. § 404.1520(d)) (the "Listing"). ALJ Berk concluded that Plaintiff was not under a disability as defined in the Social Security Act from January 1, 2002, through the date of his decision, and that the cessation of March 1, 2002, was proper.

ALJ Berk found that Plaintiff retained a residual functional capacity (RFC) for a significant range of work, with only the following limitations: can lift and/or carry a maximum of 20 pounds occasionally and 10 pounds frequently, can sit 6 of 8 hours in a typical work day, can stand or walk 6 of 8 hours in a typical workday (R. 25). Her capacity for light work was reduced by her inability to perform more than semiskilled work (R. 30). ALJ Berk concluded that Plaintiff's past relevant work did not require the performance of work functions precluded by her medically determinable impairments, and that she could perform her past relevant work as a waitress.

ALJ Berk found that Plaintiff's allegations regarding her limitations were not fully credible because the degree of pain and limitation alleged was not consistent with the objective medical evidence, including the testimony at the hearing (R. 30). Plaintiff was status post remote gunshot wound to the face requiring multiple reconstructive surgeries. Yet, that condition appeared to have resolved adequately well prior to her cessation date (R. 24). Although Plaintiff had a history of other musculoskeletal fractures and injuries, the medical evidence did not reflect more than conservative treatment for these injuries, and failed to document any regular treatment for physical impairments after December 2001. Further, the

medical evidence supported that Plaintiff's liver condition was asymptomatic and her hypothyroid condition was adequately controlled (R. 25).

The ALJ also found that Plaintiff's testimony of severity and frequency of symptoms and limitations associated with her affective and anxiety disorders was inconsistent with the record as a whole, exaggerated and unpersuasive. Moreover, ALJ Berk found the type and severity of symptoms described by Dr. White inconsistent with the other evidence of record. While Dr. White reported that Plaintiff had poor self esteem, continuous feelings of helplessness and hopelessness, in December 2001, Plaintiff stated that she "basically liked herself, " felt happy most of the time, and had only episodes of depression (R. 25). Dr White referred to multiple episodes of suicidal ideation and suicidal attempts, but during two of the three consultative psychiatric evaluations in the record, Plaintiff denied suicidal ideation. Further, during all evaluations Plaintiff denied suicide attempts and there is no medical documentation of any suicide attempt.

In addition to the inconsistencies between Dr. White's description and those of evaluating sources, the course of treatment pursued by Dr. White was essentially routine and/or conservative in nature, i.e. not the type of medical treatment one would expect for a totally disabled individual (R. 26). Moreover, the record does not document any treatment since September 2002, which further belies a mental condition as severe as reported. Finally, the level of limitation expressed by Dr. White is inconsistent with Plaintiff's work activity. Plaintiff testified that she worked 20 hours per week as a retail salesperson at Burlington Coat Factory from January 2004 until July 3, 2004.

Because Dr. White's opinion was not given controlling weight, the ALJ evaluated the

severity of Plaintiff's mental impairments using four criteria: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. Plaintiff reported that she had been trying to learn dressmaking, was interested in exercising and physical activity, liked to ride her bicycle whenever she had the opportunity, listened to the radio and watched soap operas on television. Therefore, the ALJ determined Plaintiff was not more than mildly limited in activities of daily living. Plaintiff had numerous friends, a satisfactory sex life, and appeared adequately relaxed, pleasant and sociable during evaluations. Thus, the ALJ concluded Plaintiff was not more than mildly limited in social functioning (R. 27). During Plaintiff's mental status evaluation in December 2001, reality testing was not impaired, she was quite spontaneous, her speech and thinking were adequately organized, she was well orientated to time, person and place, and she was able to repeat numbers and recall objects. Dr. White also reported that Plaintiff was in contact with reality, logical, well organized and oriented times three. Therefore, the ALJ determined Plaintiff was mildly limited in concentration, persistence and pace. The objective medical record documented no psychiatric hospitalization records or other evidence to establish episodes of decompensation of at least two weeks. The ALJ concluded Plaintiff had the mental functional capacity to perform the lower end of semiskilled work.

Finally, the ALJ found Plaintiff's inconsistent statements regarding her substance use provided sufficient grounds to doubt her credibility in the area of drug and alcohol abuse (R. 28). For example, Plaintiff stated she had been using heroin "on and off for about ten years" at a average weekly cost of $20. Yet, hospital records showed that Plaintiff reported a 20 years history of heroin use and an average weekly cost of $50. The ALJ pointed out that Plaintiff

claimed during each of her more recent evaluations and examinations that she was heroin-free

and drinking alcohol only sparingly.  Yet, a discharge instruction sheet from September 2002,

indicated that Plaintiff required assistance with substance abuse and instructed her to refrain

from using street drugs.

II.    ANALYSIS

A.    <u>Standard Of Review</u>

In adopting federal court review of Social Security administrative decisions, Congress

limited the scope of review to a determination of whether the Commissioner's decision is

supported by substantial evidence.  *See* 42 U.S.C. § 405(g); *Sherrill v. Sec'y of Health and

Human Servs.*, 757 F.2d 803, 804 (6th Cir. 1985).  Substantial evidence has been defined as

"[m]ore than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting

Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  The Commissioner's findings are

not subject to reversal merely because substantial evidence exists in the record to support a

different conclusion.  *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*citing Baker v.

Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984).

If the Commissioner seeks to rely on vocational expert testimony to carry her burden of

proving the existence of a substantial number of jobs that Plaintiff can perform, other than her

past work, the testimony must be given in response to a hypothetical question that accurately

describes Plaintiff in all significant, relevant respects.[6]  A response to a flawed hypothetical

---

[6] *See, e.g., Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir.
1987) (hypothetical question must accurately portray claimant's physical and mental
impairments); *Cole v. Sec'y of Health and Human Servs.*, 820 F.2d 768, 775-76 (6th Cir. 1987)

question is not substantial evidence and cannot support a finding that work exists which the Plaintiff can perform.

In the Benefits Review Act of 1984, 42 U.S.C. § 423(f), Congress established specific standards for the termination of disability benefits. Pursuant to the portion of § 423(f) in which Congress established the specific standard pertinent to this appeal, disability benefits may be terminated if "substantial evidence demonstrates that (1) there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and (2) the individual is now able to engage in substantial gainful activity." *See* § 423(f)(1). Moreover, there is no presumption of continuing disability. "The decision whether to terminate benefits must 'be made on the basis of the weight of the evidence and on a neutral basis with regard to the individual's condition, without any initial inference as to the presence or absence of disability being drawn from the fact that the individual has previously been determined to be disabled.' *Id.* § 423(f)." *Cutlip v. Sec. of Health and Human Services.*, 25 F.3d 284, 286-87 (6th Cir. 1994).

### B.    <u>Factual Analysis</u>

In her motion for summary judgment Plaintiff argues that ALJ Berk erred as follows: (1.) by selectively and inconsistently making credibility determinations to support his finding that Plaintiff was able to engage in substantial gainful activity and (2.) by determining that the

---

(Milburn, J., dissenting) ("A vocational expert's responses to hypothetical questions may constitute substantial evidence only if the questions posed accurately portray the claimant's impairments."); *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987) ("The question must state with precision the physical and mental impairments of the claimant."); *Myers v. Weinberger*, 514 F.2d 293, 294 (6th Cir. 1975); *Noe v. Weinberger*, 512 F.2d 588, 596 (6th Cir. 1975).

medical opinions of Plaintiff's treating physician were not entitled to controlling weight.

### 1.     *Medical Evidence and Plaintiff's Credibility*

Plaintiff argues that the ALJ "*selectively* found [Plaintiff] credible when doing so supported a finding that she was able to engage in substantial gainful activity, and *selectively* found [Plaintiff] not credible when doing so supported a finding that she was able to engage in substantial gainful activity" (Dkt. #6, p. 11).  Plaintiff suggests that the ALJ should have attributed her inconsistencies to the fact that she was an unreliable historian, and either reject all of her statements or accept them in total.  Yet, Plaintiff cites no authority that would require an ALJ to do so, and the ALJ was well within his authority to decide which statements he believed were more credible, particularly because he was able to observe Plaintiff while she testified.[7] *See, e.g. Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004), upholding a decision where the administrative law judge found plaintiff's testimony regarding his pain symptoms only partially credible.  *See also*, *Walters v. Commissioner of Social Sec.*, 127 F.3d 525, 531 (6th Cir.1997) (stating that an administrative law judge's "findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an [administrative law judge] is charged with the duty of observing a witness's demeanor and credibility.").

Plaintiff also argues, without elaboration or citation, that the ALJ did not consider "each

---

[7] Plaintiff cites three cases, *Davis*, *Garner*, and *Hephner*, for the proposition that a "judicial substantiality of evidence evaluation does not allow for selective reading of the record" (Dkt. #6, p. 13).  Yet, the cited sections all hold in slightly different versions that the "substantiality of the evidence must be based upon the record taken as a whole.  Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir.1984).  None of these cited cases requires an ALJ to reject or accept all of a Plaintiff's statements.

and all" of the factors enunciated in the regulations at 20 C.F.R. § 404.1529(c)(3). Plaintiff cites no evidence to suggest that the ALJ did not consider these factors, and in fact, the ALJ's decision discusses several of the factors enunciating in the regulations that the ALJ found most compelling.

Subjective evidence is only considered to "the extent...[it] can reasonably be accepted as consistent with the objective medical evidence and other evidence (20 C.F.R. 404.1529(a))" *Duncan v. Secretary of Health & Human Servs.,* 801 F.2d 847, 852 (1986). While the issue of a claimant's credibility regarding subjective complaints is within the scope of the ALJ's fact finding discretion when making a determination of disability, (*Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981); *Jones v. Commissioner of Social Sec.*, 336 F.3d 469, 476 (6th Cir. 2003), there are limits on the extent to which an ALJ can rely on "lack of objective evidence" in discounting a claimant's testimony.

Subjective complaints of a claimant can support a claim for disability, if there is also objective medical evidence of an underlying medical condition in the record that would explain such pain. *See Young v. Secretary of Health & Human Servs.,* 925 F.2d 146, 150-51 (6th Cir. 1990); *Duncan,* 801 F.2d at 852. While the underlying condition must have an objective basis, neither the Social Security Act nor the regulations require a claimant to prove the degree of pain and limitations by objective medical evidence. Thus, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain. Section 404.1529(c)(2),11 29 C.F.R. § 404.1529(c)(2) states:

> We will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.

*See also Duncan,* 801 F.2d at 853; *Cotton v. Bowen,* 799 F.2d 1403, 1407 (9th Cir. 1986); *Bunnell v. Sullivan,* 947 F.2d 341, 345 (9th Cir. 1991) (*en banc*); *Benson v. Heckler,* 780 F.2d 16, 17 (8th Cir. 1985); *Halpin v. Shalala,* 999 F.2d 342, 346 (8th Cir. 1993).

Yet, in determining the existence of substantial evidence, it is not the function of the federal court to try cases *de novo,* resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler,* 745 F.2d 383, 387 (6th Cir. 1984). In *Jones* the Court noted that an ALJ can reject a claimant's credibility on pain and other symptoms, and exclude these from the hypothetical question to the VE, if the ALJ's reasons are adequately explained. *Jones,* 336 F.3d at 476.

In this case, the ALJ very throughly assessed Plaintiff's credibility in light of the objective medical evidence. ALJ Berk noted that Plaintiff's routine, conservative treatment of medication and psychotherapy was not consistent with what one would expect for someone as limited as Plaintiff claimed to be (R. 26). This is a valid consideration under the regulations for finding subjective complaints not fully credible. *See* 20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v). The ALJ further noted that Plaintiff's activities suggested a higher degree of functioning than Plaintiff alleged at the hearing. Plaintiff lived alone and was actively involved in all phases of homemaking–washing, cleaning, doing laundry, and carrying out household chores; she was fully capable of looking after herself and taking care of herself (R. 26, 164, 399). ALJ Berk also noted that Plaintiff was learning dressmaking, was interested in exercise and physical activity, and liked to ride her bicycle, listen to the radio, and watch soap operas (R. 26, 165, 399). The ALJ can consider daily activities, such as these, when evaluating the credibility

18

of subjective complaints. *See* 20 C.F.R. §§ 404.1529(c)(3)(I), 416.929(c)(3)(I); *Warner*, 375 F.3d at 393.

The ALJ further noted that, although Plaintiff claimed to have difficulty with concentration, she was able to repeat seven digits forward and six digits backward, and Dr. White reported that Plaintiff could recall five numbers forward and five in reverse (R. 27, 401, 405). In addition, Plaintiff was able to recall objects after three minutes on examination with Dr. Pope, as well as with Dr. White (R. 27, 401, 405). The ALJ properly considered the medical reports and findings in determining Plaintiff's credible limitations. *See* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

ALJ Berk further noted that Plaintiff testified that she would have returned to her parttime job as a salesperson at Burlington Coat factory if she had not been replaced when she did not come to work due to depression (R. 27, 458). The ALJ noted that Plaintiff testified that she probably would have been able to perform her retail sales work as of January 2003, although she was unsure if she would have been able to do it in 2002 (R. 27, 458-59). The record did not establish a change in condition since January 2002 that would indicate an inability to do the same type of work in 2002 that she performed as of January 2004 (R. 27). *Compare Blacha v. Sec'y of Health & Human Servs.,* 927 F.2d 228, 231 (6th Cir. 1990) (plaintiff able to work for two years after his accident and did not show that his condition declined during that time, such that he would have become disabled). Although the ALJ found that this work did not rise to the level of substantial gainful activity, the ALJ reasonably considered Plaintiff's ability to do this work successfully for several months as some evidence that her limitations were not as severe as

she claimed. *See* 20 C.F.R. §§ 404.1529(c)(3),(c)(3)(I), 416.929(c)(3), (c)(3)(I) (ALJ considers prior work history and daily activities when evaluating credibility of subjective complaints).

Thus, the ALJ considered and discussed several factors in the regulations that convinced him that Plaintiff's allegations of limitation were not fully credible. The ALJ was not required to discuss all of the factors in the regulation, and in any event, Plaintiff has not explained what additional factors would have weighed in favor of her credibility. Substantial evidence supports the ALJ's credibility finding, and that finding should be upheld.

### 2. *Plaintiff's Treating Psychiatrist's Opinion*

Plaintiff argues that the ALJ erred in determining that the medical opinions of Plaintiff's treating psychiatrist were not entitled to controlling weight. 20 C.F.R. § 404.1502 defines a treating physician as "your own physician . . . who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." A treating physician's opinion should be given greater weight than those of consultative physicians who are hired for the purpose of litigation and who examine the claimant only once. *See* 20 C.F.R. § 404.1527(d)(5) (specialist's opinion generally given more weight if opinion concerns medical issues related to the area of specialty). Yet, an ALJ is not bound by a treating physician's opinion and may reject such an opinion if he gives a reasoned basis for rejecting it. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *Jones*, 336 F.3d at 477.

Here, the ALJ identified numerous inconsistencies between Dr. White's report and the other evidence of record.[8] the ALJ noted that, although Dr. White reported that Plaintiff had

---

[8] Plaintiff acknowledges that the ALJ was "literally correct" in observing (as one reason to reject Dr. White's opinion) that, while Dr. White referred to multiple episodes of suicidal ideation and suicidal attempts, Plaintiff denied suicidal ideation during two of the three

continuous feelings of helplessness and hopelessness and poor self-esteem (R. 403-04), in December 2001, Plaintiff reported that she felt happy most of the time and basically liked herself (R. 25, 397, 400). The ALJ observed that, while Dr. White reported that Plaintiff had a loss of interest in pleasurable activity (R. 403), Plaintiff reported that she was learning dressmaking, was interested in exercising and physical activity, and liked to ride her bicycle, listen to the radio, and watch soap operas (R. 26, 164-65, 399). Also, while Dr. White reported that Plaintiff was isolated, withdrawn and fearful of people (R. 403-05), Plaintiff reported in December 2001 that she had numerous friends, but did not socialize much due to a lack of transportation, rather than because of a psychiatric impairment, and Plaintiff worked for several months as a salesperson in 2004, a job that required her to deal with people (R. 26-27, 399, 455-56). The ALJ noted that even Dr. White reported that Plaintiff interacted relatively well with his staff (R. 26, 403).

The ALJ further noted that Dr. White's use of only conservative treatment was not

_____

consultative psychiatric evaluations in the record (R. 25). (Dkt. #6, p. 16). Yet, Plaintiff argues that in making this finding, the ALJ "ignored the fact that during the consultative evaluation of December 5, 2001, [Plaintiff] related that she had 'suicidal ideation' (R.4 at 400 [Exhibit 17F]), and ignored the fact that during the period that [Plaintiff] treated with Dr. White, she consistently reported 'suicidal ideation' (R.4 at 400 [Exhibit 17F]; R.4 at 404 [Exhibit 18F])." (Dkt. #6, p. 16). To the contrary, this is precisely the evidence that the ALJ considered. The ALJ acknowledged that, during one of the three consultative examinations (i.e., the December 2001 examination Plaintiff cites), Plaintiff alleged suicidal ideation "in the past" (R. 25, 400). Yet, the ALJ noted that Plaintiff specifically denied suicidal ideation during the other two psychiatric evaluations (R. 25, 310, 351). The ALJ further observed that, during all three consultative examinations, Plaintiff denied suicide attempts, and that the record did not document any suicide attempts (R. 25, 310, 351, 400). Thus, the evidence fully supports the ALJ's finding that the record did not support Dr. White's statement that Plaintiff "had multiple episodes of suicidal ideation and suicide attempts" (R. 404).

consistent with what one would expect if Plaintiff were truly as limited as Dr. White reported (R. 26). In addition, the ALJ reasoned that Dr. White's conclusion that Plaintiff could manage her own benefits appeared inconsistent with his opinion of severe limitations (R. 27).

The ALJ further reasoned that Dr. White's opinion of Plaintiff's limitations was not consistent with Plaintiff's work activity (R. 26). While Plaintiff's part-time work as a retail salesperson at Burlington Coat Factory from January 2004 until July 2004 did not rise to the level of substantial gainful activity, the ALJ could reasonably consider that Plaintiff's apparent ability to do this work for this amount of time suggests that Plaintiff's level of functioning was significantly greater than Dr. White reported (R. 26). *Compare Jones*, 336 F.3d at 477 (ALJ properly discounted physician's opinion based on plaintiff's activities).

Plaintiff suggests that Dr. White's opinion was supported by Dr. Pope's diagnosis of a depressive disorder (Dkt. #6, p. 15). Yet, Dr. Pope also advised that this condition was "fairly well compensated on the present therapeutic program" (R. 402). This would support a finding that Plaintiff's depression was well-controlled and not disabling. Plaintiff also points out that Dr. Pope assigned a GAF of 70. Yet, this indicates only mild symptoms and also supports the ALJ's decision.

Plaintiff further relies on Dr. Bernstein's July 2001 diagnosis of major depression and assignment of a GAF score of 45. Yet, Dr. Burnstein also advised that Plaintiff's depression was "stable" on medication, and he diagnosed polysubstance addiction (R. 349). Because Plaintiff cannot establish disability based on drug addiction or alcoholism, *see* 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J), and because the doctor advised that Plaintiff's depression was controlled with medication, this report does not warrant a rejection of ALJ Berk's findings. In addition, the

Sixth Circuit has rejected the argument that an ALJ must put much stock in a lower GAF score. *Kornecky v. Comm'r of Soc. Sec.,* No. 04-2171, 2006 WL 305648, at \*\*13-14 (6th Cir. Feb. 9, 2006), finding "we are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place." Here, the lower GAF score was assigned in July 2001, more than six months before Plaintiff's benefits were terminated and while she was still actively using drugs. During a later, and relevant time period, Dr. Pope assigned a GAF of 70, indicating only mild symptoms (R. 402).

Plaintiff also argues that the ALJ's decision is inconsistent with the opinion of the State Agency hearing officer. While that hearing officer, like ALJ Berk, found Plaintiff not disabled or entitled to benefits (R. 56-61), Plaintiff's counsel points out that this adjudicator found that she had a "severe psychiatric impairment" with "important work-related limitations" (R. 58, 60). The ALJ, however, decided the case *de novo*. In any event, the prior state hearing officer decision is consistent with the ALJ's decision on two important issues. Under the Social Security program, an individual must make an initial threshold showing of a "severe" impairment that significantly limits the ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 404.1521, 416.920(c), 416.921. Both the State Agency hearing officer and the ALJ found that Plaintiff's met this threshold test of severity (R. 30, 60). Yet, both the State Agency hearing officer and the ALJ found that Plaintiff was not disabled because, even with her limitations, she still could perform her past work as a waitress (R. 30, 60). See 20 C.F.R. §§ 404.1520(f), 416.920(f).

Thus, the ALJ gave sufficient reasons for rejecting Dr. White's opinion. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); *Jones*, 336 F.3d at 477. Substantial evidence supports the ALJ's

finding that Dr. White's opinion was not entitled to significant weight, and his decision should be upheld.

### III.    EVIDENCE SUBMITTED TO THE APPEALS COUNCIL

Plaintiff introduces evidence submitted first to the Appeals Council, but does not make an argument for remand based on this "new" evidence. Where a party presents new evidence on appeal to the Appeals Council that denies review or to the federal court for the first time, the Court can consider the evidence only to determine if a remand is appropriate under sentence six of 42 U.S.C. § 405(g) for further consideration of the evidence but only if the party seeking remand shows that the new evidence is material.[9] In this case, Plaintiff has not provided this Court with an argument for a sentence six remand. Nor is it evident that this evidence warrants a remand under sentence six of § 405(g). The June 2, 2001 to February 21, 2005, medical records submitted from Victor Corondon, M.D., primarily only document Plaintiff's previously stated conditions, such as hepatitis C and hypothyoidism, which are already in the medical record.

This Court need only consider issues that have been fully developed by the briefs or in the record. Issues that are adverted to in a perfunctory manner without some effort to develop an argument related to them are generally deemed waived. *Gragg v. Ky. Cabinet for Workforce Dev.*, 289 F.3d 958, 963 (6th Cir.2002). Further, "[i]t is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir.1997). Therefore, there is no basis for this court to order a remand based on this evidence first presented to the Appeals Council.

---

[9] *See*, footnote 5.

## IV. RECOMMENDATION

For the above stated reasons, the ALJ's decision is supported by substantial evidence. Accordingly, **IT IS RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED** and the Commissioner's motion for summary judgement **GRANTED.** The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs*., 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local*, 231, 829 F.2d 1370,1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: May 31, 2007                          s/Steven D. Pepe_____
Flint, Michigan                              United States Magistrate Judge

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on <u>May 31, 2007,</u> I electronically filed the foregoing paper with the Clerk  Court using the ECF system which will send electronic notification to the following: <u>James A. Brunson, Timothy P. Murphy,</u> and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:<u> David P. Morreale, 1600 Woodward Ave., Ste. 224, Bloomfield Hills, MI 48304-2444, Social Security Administration - Office of the Regional Counsel, 200 W. Adams, 30th. Floor, Chicago, IL 60606</u>

<div style="margin-left:50%">

<u>s/ James P. Peltier</u>
James P. Peltier
Courtroom Deputy Clerk
U.S. District Court
600 Church St.
Flint, MI 48502
810-341-7850
 pete_peliter@mied.uscourts.gov

</div>